USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BASF CORPORATION,

      Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

      Defendant.

Before:   WALLACH, Judge
Court No.:  04-CV-9662

[Defendant's Motion for Summary Judgment is GRANTED.]

Dated: March 10, 2008

McDermott & Radzik, LLP (William R. Connor and Matthew Loesberg) for Plaintiff BASF Corporation.

Barry N. Gutterman & Associates (Barry N. Gutterman and Robert Briere) for Defendant Norfolk Southern Railway Company.

## OPINION

**Wallach, Judge**

### I
### INTRODUCTION

Defendant Norfolk Southern Railway Company ("Norfolk Southern") has moved for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiff BASF Corporation's ("BASF") suit. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (Plaintiff's claim arises under 49 U.S.C. § 11706 and/or under the federal common law). Because this action was commenced more than a year after Defendant's declination letter was

received by Plaintiff, it is time barred,[1] and Defendant's Motion for Summary Judgment is granted.

## II
## BACKGROUND

This case involves a shipment of pesticides that was loaded onto an ocean-going container in St. Louis, Missouri, destined for Antwerp, Belgium with a scheduled arrival date of January 24, 2003. Grabski Aff. ¶¶ 3, 13. The shipper BASF hired NYK Line (North America) Inc. ("NYK") to be responsible for the transport of the goods; BASF had previously arranged numerous international shipments with NYK.[2] Id. ¶ 16. As the shipment required both land and sea transport, the land carriage portion was subcontracted on January 6, 2003, by NYK to Norfolk Southern to carry the goods by rail from St. Louis, Missouri, to Norfolk, Virginia. Cappy Aff. ¶ 8; Grabski Aff. ¶ 6. While in transit on the land carriage portion of the transport, the freight car containing Plaintiff's shipment[3] derailed near Ford, Virginia, resulting in the damage and contamination of the goods. Grabski Aff. ¶ 7.

On April 30, 2003, BASF filed a claim with Norfolk Southern for loss and damage to the goods that were involved in the accident.[4] Cappy Aff. Exhibit 5. Norfolk Southern has produced a letter dated July 29, 2003, and addressed to Ms. Katherine Sanders at BASF Corporation declining BASF's claim for compensation on the grounds that Norfolk Southern is liable only to the "Rail Services Buyer." Id. Exhibit 6. BASF denies receiving the July 29, 2003 letter. Sutera Aff. ¶ 7; Grande Aff. ¶ 5. Norfolk Southern was served with the Summons and Complaint from

---

[1] Because Plaintiff's suit is time barred, Plaintiff and Defendant's arguments regarding liability are not addressed here.
[2] Previous shipments contracted between BASF and NYK were governed by the U.S. Carriage of Goods by Sea Act ("COGSA") and the NYK bill of lading, each time with identical terms and conditions. Grabski Aff. ¶ 16.
[3] The shipment was transported by Norfolk Southern in container TRLU 615327. Cappy Aff. ¶ 5.
[4] In addition to BASF's claim, Norfolk Southern also received claim letters from NYK on August 12, 2003, and St. Paul Travelers (BASF's insurance company) on April 16, 2004. Cappy Aff. Exhibit 3, 7. These claims were declined by Norfolk Southern on September 24, 2003, and July 29, 2004, respectively. Cappy Aff. Exhibit 4, 8.

BASF in this case on December 20, 2004, and oral argument on Defendant's Motion for Summary Judgment was held on February 20, 2008.

## III
## STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the disclosure and discovery materials on file, and any affidavits, show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). An issue of fact is to be considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact will be material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see also Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003).

A party against whom a claim is asserted may "move, at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). The initial burden of showing that no genuine issues of material fact exist falls to the moving party. Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir. 1987). In response, the adverse party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Celotex Corp., 477 U.S. at 321-22. Inferences drawn from the facts provided must be "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)). However, the "mere existence of a scintilla of evidence" in support of the non-movant's case is insufficient to defeat a summary judgment motion. Anderson, 477 U.S. at 252.

3

# IV
# DISCUSSION

## A
## Norfolk Southern Intermodal Rules Circular No. 2 is the Appropriate Contract to Apply

Defendant argues that because the NYK bill of lading would have been issued had the goods arrived as planned in Norfolk, VA, the bill of lading terms are applicable in this case. Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Brief") at 6. Defendant points to Insurance Co. of North America v. S/S American Argosy, 732 F.2d 299 (2d Cir. 1984), for the proposition that bills of lading are applicable even in cases where the goods in question are damaged before the bill of lading was issued. Id. at 6-7.

Defendant additionally argues that the NYK bill of lading is a maritime contract and thus is subject to federal maritime law. Id. at 7. In doing so, Defendant uses a "conceptual" approach to analyzing bills of lading to contend that the essential nature of the contract is the maritime aspect of the agreement, and that the land carriage element should not affect its status as a maritime contract. Id. at 7-8 (citing Norfolk S. Ry. v. Kirby, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004)). Defendant concludes that the Carriage of Goods by Sea Act ("COGSA") governs the bill of lading in question, and that it establishes shippers' rights against common carriers and the carrier's minimum liability to shippers for cargo damage and loss.[5] Id. at 8 (citing 46 U.S.C. §§ 1302-1304).

Defendant also contends that the NYK bill of lading is a through bill of lading, and therefore covers the entire movement of the goods to the destination. Id. at 9. According to Defendant, the Himalaya Clause[6] found in section 6 of the bill of lading extends the ocean

---

[5] Section 2(2) of the NYK bill of lading also mandates the application of COGSA to the agreement. Grabski Aff. Exhibit A.
[6] A Himalaya Clause of a bill of lading exists so that "downstream parties expected to take part in the contract's execution [can] benefit from the liability limitations." Norfolk S. Ry., 543 U.S. at 20. This allows, in addition to the

carrier's limitations and defenses to Norfolk Southern because it is within the class of beneficiaries defined therein. Id. Defendant concludes that because COGSA's and the bill of lading's limitations extend to Norfolk Southern, BASF's suit was time barred when it failed to file its claim within one year of the date on which the goods were to be delivered, as the bill of lading requires.[7] Id. at 10 (citing 46 U.S.C. § 1303(6); Grabski Aff. Exhibit A ("NYK bill of lading") § 26(2)).

Plaintiff contends that Defendant, in arguing that its liability is determined by the NYK bill of lading due to section 6, ignores the express language of section 8 of the NYK bill of lading. Id.; NYK bill of lading § 8(2)(ii) (stating that carriers are only liable for loss or damage to the extent which such carriers are responsible under the conditions of the transport document). Plaintiff argues that in this case the transport document is Norfolk Southern Intermodal Rules Circular No. 2 (November 8, 2000, updated June 27, 2002) ("NS Circular 2"), and therefore its provisions are controlling on the issue of liability rather than those found in the bill of lading. Id.

As Defendant establishes in its brief, and Plaintiff conceded to at oral argument, the NYK bill of lading properly applied to Norfolk Southern as a subcontractor even before the bill of lading was issued.[8] See NYK bill of lading. According to NYK bill of lading § 6(2), "every [subcontractor] shall have the benefit of every right, defence, limitation, and liberty of whatsoever nature herein contained or otherwise available to the Carrier as if such provisions

---

primary carrier, the "carrier's agents or other parties participating in effectuating the shipment" to be covered by the provisions of the bill of lading. Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 317 n.2 (2d Cir. 2006).

[7] The delivery date for BASF's cargo was set for January 24, 2003, Grabski Aff. § 13, but the Summons and Complaint for this suit were not served until December 20, 2004, Cappy Aff. § 24.

[8] "[I]t is not unusual to issue a bill of lading after a carrier has taken possession of cargo[,] and courts have regularly held that this does not prevent parties from being bound by its terms." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, No. 03 Civ. 5462, 2004 U.S. Dist. LEXIS 15197 at *14 (S.D.N.Y August 2, 2004) (quoting Anvil Knitwear, Inc. v. Crowley Am. Transp., Inc., No. 00 Civ. 3243, 2001 U.S. Dist. LEXIS 10684 at *7 (S.D.N.Y. July 27, 2001)); see Ironfarmers Parts & Equip. v. Compagnie Generale Maritime et Financiere, No. CV493-321, 1994 U.S. Dist. LEXIS 18874 (S.D. Ga. June 3, 1994) ("[i]t is well-settled that as long as a bill of lading would have been issued in the ordinary course of business, the bill of lading serves as a contract governing the relationship of a shipper and carrier even if it was not actually issued.").

were expressly for his benefit." Norfolk Southern, as a subcontractor under NYK, falls under the protection of this provision. However, the NYK bill of lading goes on to provide, in the section entitled "Responsibility," that:

> if . . . loss of or damage to or in connection with the Goods occurred while the Goods were in custody of carrier(s) by land or air, the Carrier shall only be responsible for such loss or damage to the extent to which such carrier(s) by land or air are responsible under the terms and conditions of the transport document(s) of the carrier(s) by land or air . . . .

NYK bill of lading § 8(2)(ii). The transport contract between NYK and Norfolk Southern thus determines the parameters for Norfolk Southern's liability for damage caused during transport.

The terms and conditions for the shipment in question were designated by NYK as governed by NSPQ 00002189.00, a price quote agreement entered into by NYK and Norfolk Southern. Cappy Aff. ¶¶ 11, 12; Cappy Aff. Exhibit 1 (electronic waybill identifying the contract for shipment as NSPQ 00002189.00). Under NSPQ 00002189.00, the shipment is governed by NS Circular 2. Id. ¶ 13. Additionally, NS Circular 2 was treated as the controlling contract of carriage by Norfolk Southern in its correspondences sent to St. Paul Travelers and NYK.[9] Cappy Aff. Exhibit 6, 8; Connor Aff. Exhibit 1 (in which paragraph 2 of all letters sent by Alan Creech stated "Norfolk Southern Intermodal Rule Circular No. 2 § 8 governs this shipment"). Thus, NS Circular 2 is the controlling contract in this agreement.

### B
### Under NS Circular 2, Plaintiff's Action is Time-Barred

Defendant's argument in the alternative is that BASF's suit is time barred because it is governed by the exempt transportation agreement between Norfolk Southern and NYK and the Norfolk Southern governing publication. Defendant's Brief at 12. Defendant points to NSPQ

---

[9] Defendant argues that statements made by Norfolk Southern prior to the filing of the complaint have no bearing on whether the NYK bill of lading or NS Circular 2 applies. Defendant's Reply at 9. However, the admission by Norfolk Southern that NS Circular 2 applies remains a relevant consideration for the court.

6

00002189.00, a price quote agreement between Norfolk Southern and NYK, which provides that the shipment is governed by NS Circular 2. Id. According to Defendant, this means that any lawsuit involving a claim of loss, damage or delay to cargo must be commenced within one year after receipt of written notice from Norfolk Southern declining the claim. Id. Norfolk Southern argues that it denied BASF's claim on July 29, 2003, triggering the one year limitation as set forth in NS Circular 2, thus rendering BASF's suit time barred when the Summons and Complaint were not served on Norfolk Southern by July 29, 2004. Id.

Plaintiff responds that though Norfolk Southern was able to produce a letter denying BASF's claim dated July 29, 2003, it was not able to show that the letter in question was ever received by the Plaintiff. Plaintiff's Brief at 8. According to Plaintiff, Norfolk Southern does not meet the standard to create a presumption that the letter was received because it does not adequately establish the procedures involved in mailing this declination letter, nor does it provide proof of a mailing certificate or evidence of how mail is handled and how records of mailings are kept by the company. Id. at 9. Plaintiff adds that even if the court finds sufficient evidence to meet the presumption, it is rebutted by BASF's provision of testimony and evidence of non-receipt.[10] Id. at 10. This, Plaintiff argues, leaves the issue of receipt as a question of fact for the court to decide. Id.

According to NS Circular 2, "[a]s a condition precedent to any right of recovery, any lawsuit . . . must be commenced within one year after receipt of written notice from [Norfolk Southern] declining the claim in full or in part." NS Circular 2 § 8.7.4(a). Here, the declination letter sent to BASF was dated July 29, 2003, and the Summons and Complaint were served on December 9, 2004, more than a year after the date of the letter. Though Plaintiff argues that it

---

[10] Plaintiff points to the affidavits of Migdalia Grande and Donna Sutera, which state that BASF never received the July 29, 2003 declination letter from Norfolk Southern. Plaintiff's Brief at 10; see Sutera Aff. ¶ 7; Grande Aff. ¶ 5.

7

never received Norfolk Southern's written notice, Defendant can establish a presumption that the letter was received by providing information regarding the process of mailing the letter. Hagner v. United States, 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932) (finding that a letter when properly sent, "creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed").

In order to create and maintain a presumption that a letter was received, New York law[11] provides that:

> when . . . there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption. There must be -- in addition to denial of receipt -- some proof that the regular office procedure was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable.

Leon v. Murphy, 988 F.2d 303, 309 (2d Cir. 1993) (quoting Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)); see Akey v. Clinton County, 375 F.3d 231, 235 (2d Cir. 2004).[12] Additionally, "personal knowledge [of mailing procedures] is required only to establish regular office procedure, not the particular mailing." Leon, 988 F.2d at 309 (quoting Meckel, 758 F.2d at 817). Thus, it is not necessary for the sender to express a specific memory of mailing the exact notice to obtain the presumption; rather, a statement that the individual followed the office procedure and that there are records indicating the letter was sent is satisfactory. Vill. of Kiryas Joel Local Dev. Corp. v. Ins. Co. of N. Am., 996 F.2d 1390, 1395 (2d Cir. 1993).

In this case, Defendant provides sufficient evidence of the office procedure used to secure the presumption of receipt. Mr. Cappy states in his affidavit that Norfolk Southern mailed the

---

[11] The parties agreed at oral argument that Second Circuit law governs this question.

[12] Plaintiff contends, in its brief and at oral argument, that because NS Circular 2 looks specifically to the receipt of declination rather than the mailing of declination, the standard should shift and receipt should not be presumed. Plaintiff's Brief at 6-7. However, Plaintiff cites no authority for this assertion, and the standard specifically provides for a presumption of receipt rather than a presumption of mailing. Meckle, 758 F.2d at 817.

8

letter of declination and that it was not returned to Norfolk Southern as undeliverable. Cappy Aff. ¶¶ 17-18; Cappy Aff. Exhibit 6 (providing a copy of the letter of declination dated July 29, 2003 and addressed to Ms. Katherine Sanders at BASF Corporation). Additionally, the affidavits of Norfolk Southern employees Willie Barfeld, Patricia Lee, and Art Anderson detail the affiants' specific knowledge of the mailing procedures of the company and how they were followed in mailing the declination letter to BASF. In her affidavit, Ms. Lee described her normal procedures for sending declination letters[13] and attached an electronic log "kept in the ordinary course of business [that] indicates that the claim was denied on July 29, 2003." Lee Aff. ¶¶ 5-9; Lee Aff. Exhibit B (copy of electronic log). Additionally, Mr. Andrews and Mr. Barfeld offered their personal knowledge of the course Norfolk Southern mail took on July 29, 2003, starting from the Freight Claims outbox where the declination letter was placed by Ms. Lee, and ending with the mail reaching an area designated for USPS pickup with postage applied. Andrews Aff. ¶¶ 3-4; Barfeld Aff. ¶¶ 3-6. These statements effectively establish the office procedures followed in the regular course of business at Norfolk Southern, and that those procedures were followed on July 29, 2003, in the mailing of the declination letter to BASF. Furthermore, the letter was properly addressed in a way "identical to BASF's address on its claim letter of April 30, 2003," and the declination letter was never returned to Norfolk Southern as undeliverable. Lee Aff. ¶¶ 7, 10. Under governing law, BASF is presumed to have received the declination letter in a timely fashion.

Though Plaintiff provides the affidavits of several employees describing how the

---

[13] According to Ms. Lee, her normal procedures are as follows: "(a) After preparing the letter, I would drop the letter into the NS Freight Claims outbox; (b) The NS Freight Claims outbox is used exclusively by freight claim personnel; and (c) As is our usual procedure, the NS letter along with the other mail within the Freight Claims outbox is collected by Art Andrews, Customer Service Representative for freight claims settlement. The mail is then taken to the mail drop station in our building, where it is then carried to the main NS mailroom in Atlanta for handling and disbursement." Lee Aff. ¶¶ 8-9.

company processes its incoming mail and attesting that Norfolk Southern's declination letter was not received or processed by the system, this is not enough to meet the clear standard established by Meckel to rebut the presumption of receipt.[14] These affidavits detail the process of receiving mail, but Plaintiff provides no proof that there was a breach in procedure or carelessness on the part of the sender as the standard requires. Thus, the presumption is not rebutted, and Norfolk Southern's declination letter, mailed on July 29, 2003, is presumed to have been received by BASF in a timely manner. Plaintiff's suit therefore was not filed within a year of receipt of Defendant's notice of declination as is necessary according to NS Circular 2, and is time barred.

## V
## CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's action is dismissed, with prejudice, as time barred.

Evan J. Wallach, Judge

Dated: March 10, 2008
New York, New York

---

[14] Some caselaw in New York appears to support the conclusion that Plaintiff relies upon from In re Yoder, 758 F.2d 1114, 1118 (6th Cir. 1985), which holds that direct testimony of non-receipt, when bolstered with evidence of standard procedures used to process incoming mail, can be used to rebut the presumption of receipt. However, Meckel provides a clear standard that requires some affirmative evidence that "the regular office procedure was not followed or was carelessly executed." Meckel, 758 F.2d at 817. This standard has been widely followed within the Second Circuit, and will be followed here. In addition to those cited above, see RPT Metro Equities Ltd. P'ship v. Petcas Mgmt., Nos. 95-7884, 96-7122, 1996 U.S. App. LEXIS 25230 at *4 (2d Cir. September 26, 1996); Manigault v. Macy's E., LLC, 506 F. Supp. 2d 156, 161 (E.D.N.Y. August 28, 2007); FTI Consulting, Inc. v. Rossi, No. 03 Civ. 4033, 2004 U.S. Dist. LEXIS 2860 at *14 (S.D.N.Y. February 25, 2004); Lankler, Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d 398, 409 (S.D.N.Y. 2003); Hogarth v. New York City Health & Hosps. Corp., No. 97 Civ. 0625, 2000 U.S. Dist. LEXIS 4590 at *12-*13 (S.D.N.Y. April 11, 2000); Bronia, Inc. v. Ho, 873 F. Supp. 854, 859 (S.D.N.Y. 1995).